UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| QUE SERA PROMOTIONS, INC., and MARGARET NYKOWSKI, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 2:05cv38 PPS ) |
| POUGHKEEPSIE FORD, INC., and TIME WARNER CABLE, | ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

Plaintiff Que Sera Promotions, Inc. ("Que Sera"), an Indiana corporation, had a contract with Defendant Poughkeepsie Ford, Inc. ("Ford"), pursuant to which Que Sera provided Ford with sales promotion services. To fulfill its agreement with Ford, Que Sera contracted with Time Warner CityCable Advertising ("TWCCA"), to film a television commercial for Ford. Plaintiff Margaret Nykowski, a citizen of Indiana, appeared in the commercial. Nykowski and Que Sera filed this action alleging that "Time Warner Cable" and Ford stole their commercial and used it in a subsequent sales promotion that was not authorized by Que Sera, the alleged owner of the commercial.

This matter is before the Court on TWCCA's motion to dismiss for lack of personal jurisdiction. [Doc. 17]. Plaintiffs actually sued "Time Warner Cable," not TWCCA, but "Time Warner Cable" does not exist as a separate entity. Instead, "Time Warner Cable" is a trade name

used as a shorthand description for a bevy of companies that are related to one another.[1]

We hold that because TWCCA does not conduct business in Indiana and has no minimum contacts here, the motion to dismiss for lack of personal jurisdiction is **GRANTED**.

### I.  BACKGROUND

The Plaintiffs in this action are both citizens of Indiana.  (Am. Not. of Removal at ¶¶ 4,5) (hereinafter "Notice").  The Plaintiffs entered into the contract with Ford in May 2003. (Complaint at ¶ 1).  Ford is a Delaware corporation with its principal place of business in New York.  (Notice at ¶ 6).   The contract contains a forum selection provision which requires the parties to that agreement to adjudicate all disputes in Lake County, Indiana.  However, TWCCA is not a party to the contract between Que Sera and Ford.

Que Sera contracted with TWCCA to produce the televison commercial to be used by Ford. TWCCA is a New York General Partnership with its principal place of business in New York, New York. (Sklover Aff. at ¶ 4).   TWCCA is itself owned by several different business organizations which gives it the appearance of a corporate spaghetti bowl.[2]  To resolve the jurisdictional questions in this case, we must make our way to the bottom of the bowl.   TWCCA has three general partners:

---

[1] There is a corporate entity known as Time Warner Cable, Inc. but Plaintiffs have not sued that corporate entity. *See* Complaint at 1.   The Plaintiffs do not assert in their response that they sued Time Warner Cable, Inc.  Instead, they tacitly admit that TWCCA is the entity with whom they contracted (and intended to sue), but argue that they should be allowed to sue entities operating in Indiana as "Time Warner Cable."  Time Warner Cable, Inc. is not one of those entities.  We address the Indiana entities below.

[2] Subject matter jurisdiction is not in question here.  The Court is satisfied through its review of TWCCA's removal papers that it has subject matter jurisdiction through diversity of citizenship.

1. Time Warner NY Cable LLC ("TWNYC"): TWNYC is a Delaware limited liability company with a principal place of business in New York, New York. TWNYC has one member, Time Warner Cable, Inc. ("TWC"). TWC is a Delaware corporation with a principal place of business in Stamford, Connecticut. (*Id*. at ¶¶ 4,6).

2. Time Warner Entertainment Company, L.P. ("TWE"); TWE is a Delaware limited partnership with a principal place of business in Stamford, Connecticut. TWE has three general partners and two limited partners. The general partners are: a) TWNYC; (b) TWH Holding I LLC, a Delaware limited liability company with a principal place of business in Stamford, Connecticut that has TWC as its only member; and c) TWE Holding II LLC, also on Delaware limited liability company with a principal place of business in Stamford, Connecticut that has TWC as its only member. TWE's limited partners are: a) American Television and Communications Corporation, a Delaware Corporation with a principal place of business in New York, New York; and b) TWE Holdings I Trust, a Delaware statutory trust owned by MOC Holdco I, Inc., a Delaware corporation with a principal place of business in Philadelphia, Pennsylvania. (*Id*. at ¶¶ 4,7).

3. Queens Inner Unity Cable System ("QUICS"): QUICS is a New York general partnership with a principal place of business in New York, New York. QUICS has two partners: a) TWE; and b) TWQUICS Holdings L.L.C., a Delaware limited liability company with a principal place of business in Stamford, Connecticut. TWQUICS has only one member – TWE. (*Id*. at ¶¶ 4,8).

TWCCA operates under the general business name of "Time Warner Cable" as do a number of other business entities that are owned by some of the same parents as TWCCA. (*Id*. at ¶3). For example, in Indiana, there are three companies that do business under the name Time Warner Cable. (*Id*. at ¶ 10). One of these companies is TWE. Recall that TWE is one of TWCCA's general partner. (*Id*.) TWE provides cable services in Indiana. (*Id*.).

TWCCA is not a foreign business organization registered to do business in Indiana under the name "Time Warner Cable." TWCCA does not maintain any offices or telephone listings in Indiana nor does it have any employees, representatives, or agents in Indiana. (Benedict Aff. at ¶ 4). It does not advertise or solicit business in Indiana and has no real or personal property in Indiana. (*Id*.). TWCCA does not have any role in advertisement sales for any of the related "Time Warner" entities operating in Indiana. (Sklover Aff. at ¶10).

The entirety of the transaction between Que Sera and TWCCA occurred in New York. In May 2003, Ray Vallone of Que Sera contacted TWCCA to film the Ford commercial and show it on the Time Warner Cable system serving the Poughkeepsie, New York area. (Benedict Aff. at ¶ 5). This was the first time that TWCCA had done business with or even heard of Que Sera. (*Id*.). On May 21, 2003, Vallone came to TWCCA's New York office to film the Ford commercial. (*Id*. at ¶ 7). After filming, Vallone approved the commercial and paid TWCCA's filming and advertising charges on behalf of Que Sera. (*Id*.) The commercial then ran on the Time Warner Cable system servicing the Hudson Valley area of New York. (*Id*.).

A few months after completing the Ford commercial, Que Sera again contacted TWCCA to use its services to film another commercial – this one for a Kingston, New York auto dealership. (*Id*. at ¶ 9). Vallone traveled to New York to participate in the filming and editing of

this commercial as well. (*Id*.).

According to the complaint, after this second commercial was filmed, Ford and TWCCA wrongfully created another commercial for Ford using at least some of the images from the commercial that Que Sera had purchased. (Comp. at ¶ 5). In other words, Ford and TWCCA used Plaintiffs' commercial work without their permission. When Vallone caught wind of this, he traveled to TWCCA's offices in New York in September 2003 to discuss this claim (Benedict Aff. at ¶ 8), and this litigation ensued.

## II. DISCUSSION

TWCCA moves for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that it is not subject to the personal jurisdiction of this Court. TWCCA submitted two affidavits in support of its motion. The Plaintiffs submitted one affidavit in their response to which they attach the results of an Indiana records search demonstrating that some companies do business in Indiana under the name "Time Warner Cable."

A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant and must come forth with a *prima facie* showing that jurisdiction over a defendant is proper. *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).[3] In determining whether a plaintiff has met this burden, a court may consider affidavits from both parties.

---

[3]Plaintiffs' counsel points us to Indiana decisions which hold that the defendant bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence. *See, e.g., North Texas Steel Co., Inc. v. R.R. Donnelly & Sons Co.*, 679 N.E.2d 513 (Ind. App. 1997). However, in federal cases, "the proper allocation of the burden of proof for purposes of personal jurisdiction. . . is not controlled by state law in diversity cases." *Purdue*, 338 F.3d at 782 n. 11.

*Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) *superceded by statute on other grounds*. The allegations in plaintiffs' complaint are to be taken as true unless controverted by the defendant's affidavit; and any conflicts in the affidavits are to be resolved in plaintiffs' favor. *Id.*; *see also Purdue*, 338 F.3d at 782-83.

A federal district court exercising diversity jurisdiction has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction. *RAR*, 107 F.3d at 1275. Whether an Indiana state court would have jurisdiction over PTC requires a two-step analysis. *Purdue*, 338 F.3d at 779. First, the Court must determine whether the Indiana long arm statute, specifically Indiana Trial Rule 4.4(A), subjects TWCCA to personal jurisdiction. *Id.* If it does, then the Court must determine whether the exercise of jurisdiction over TWCCA comports with the requirements of federal due process. *Id.*

**A.     The Indiana Long-Arm Statute**

Indiana's long-arm contains eight enumerated acts that establish personal jurisdiction as well as a recently added catch-all provision that provides, "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. Trial Rule 4.4(a). This additional provision essentially collapses the two-prong test of personal jurisdiction test into a single inquiry of whether the exercise of personal jurisdiction is consistent with the Constitution of the United States. *See Lighthouse Carwash Sys., LLC v. Illuminator Bldg. Co., LLC*, 2004 WL 2378844*, * 2 (S.D. Ind. Aug. 31, 2004); *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 955 (N.D. Ind. 2004). Thus, Indiana's long arm statute is now co-extensive with the limits of due process. *Richards & O'Neil, LLP v. Conk*, 774 N.E.2d 540, 550 n. 6 (Ind.App.2002) (concurring opinion). Nevertheless, because the Plaintiffs

have identified a particular section of the Indiana Long Arm statute, Indiana Trial Rule 4.4(A)(1), as conferring jurisdiction we will first consider this basis for personal jurisdiction before moving to the due process analysis.

The section upon which Plaintiffs rely states that personal jurisdiction exists if the defendant is "doing any business in this state." *Id*.  Indiana state cases instruct us to use an expansive definition of the phrase "doing business." *Saler v. Irick*, 800 N.E.2d 960 (Ind. Ct. App. 2003). However, our review of that phrase is not without limitation.  As the Seventh Circuit has explained:

> [o]ne way of thinking about the concept of 'doing business,' as it is understood in cases interpreting long-arm statutes and the due process limitations on the reach of those statutes . . . is that it picks out those nonresident businesses that are so like resident businesses insofar as the benefits they derive from state services are concerned, that it would give them an undeserved competitive advantage if they could escape having to defend their actions in the local courts.

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 541 (7th Cir. 1998); *North American Van Lines, Inc. v. A .Colonial Moving & Storage Co., Inc.*, 291 F. Supp. 2d 799, 805 (N.D. Ind. 2003).  Thus, in determining whether an entity is conducting business in Indiana we look to whether it has offices or sales in the state and also whether it advertises or maintains bank accounts in the state.  *IDS Life*, 136 F.3d at 541; *North American Van*, 291 F. Supp. 2d at 805; *SMC Corp. of America v. King Industrial*, 2003 WL 21398103, * 4 (S.D. Ind. June 12, 2003).

TWCCA asserted via affidavit that it does not maintain any offices in Indiana, does not have any agent, officer, or employee performing services in Indiana, and does not own real or personal property in Indiana.  TWCCA also submitted affidavit testimony that Que Sera

7

contacted TWCCA, that the purchase order was signed in New York, that the parties filmed the commercial in New York, that Vallone paid TWCCA for the commercial while still in New York, and that TWCCA aired the commercial only in New York.  The Plaintiffs do not dispute any of these facts in their response.  Moreover, they have not provided the Court with any evidence that TWCCA maintains any of the business contacts to Indiana that we traditionally expect to see.

Nevertheless, the Plaintiffs argue that TWCCA was "doing business" in Indiana because at all times during their transaction, TWCCA identified itself as "Time Warner Cable." They stress that there are three businesses registered in Indiana with that business name and one of them, TWE, is one of TWCCA's general partners.  According to the Plaintiffs, during the course of their dealings, TWCCA identified itself only as "Time Warner Cable."  Thus, the Plaintiffs argue that because TWE does business in Indiana, and TWE is a general partner of TWCCA, they should thus be allowed to sue TWCCA in Indiana. The theory upon which Plaintiffs rely is "piercing the corporate veil."

The Plaintiffs' reference to a corporate veil analysis is misplaced.  TWCCA is not a corporation; it is a partnership.  Thus, TWE is not TWCCA's parent company. Rather, TWE is a general partner in TWCCA.   Accordingly, the question is when, if ever, can the actions of a general partner subject the partnership to personal jurisdiction in Indiana.

It is well settled that "personal jurisdiction over a partnership has been found sufficient to establish personal jurisdiction over the general partners." *Banta Corp. v. Hunter Publishing Ltd. P'ship.*, 915 F. Supp. 80, (E.D. Wis. 1995); *Wolfson v. S&S Securities*, 756 F. Supp. 374, 377 (N.D. Ill. 1991); *see also, Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990).  Moreover, the

actions of a partner within the scope of the general partnership's purpose in a particular state will confer personal jurisdiction over the partnership. *See Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 467 (1st Cir. 1990). The obvious corollary to this rule is that actions of a general partner in one state that are not in furtherance of the partnership cannot confer personal jurisdiction over the partnership in that state

It makes sense that a partnership's activities binds the general partners and that a general partner's activities taken within the scope of the partnership likewise binds the partnership to the personal jurisdiction of a state. It is a basic principal of partnership that the general partner is an agent of the partnership. *Monon Corp. v. Townsend, Yosha, Cline & Price*, 678 N.E.2d 807, 810 (Ind. App. 1997); *Mayerson v. DeBuono*, 694 N.Y. S.2d 260, 267 (N.Y. Sup. Ct. 1999). This is necessarily so because partnerships do not exist as separate legal entities – and, thus, cannot act except by the actions of the partners. *Donatelli*, 893 F.2d at 467. The corollary also makes sense because, ordinarily, the actions of a general partner outside of the scope of the partnership do not bind the partnership. *See* Ind. Stat. 23-4-1-9(2); N.Y. Partnership Law § 20(2).

With these general principles in mind, we turn back to the facts of this case. TWE's actions in Indiana had nothing to do with the business of TWCCA. It is true that TWE provided cable services in Indiana and that TWCCA provides cable service in New York. However, TWCCA as a partnership does not provide any form of cable service in Indiana. Thus, we cannot say that TWE's cable activities in Indiana have anything to do with TWCCA's cable activities in New York. We simply fail to see how TWE's contacts with Indiana have anything to do with its status as a general partner in TWCCA. Accordingly, we find that TWE's Indiana contacts are not attributable to TWCCA for purposes of this lawsuit.

Moreover, even if Plaintiffs are correct that the appropriate analysis is whether we can "pierce the corporate veil" of TWCCA and hold it responsible for the actions of TWE, they still would not prevail. A party seeking to pierce the corporate veil must establish that "the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice." *Comm. Care Centers, Inc. v. Hamilton*, 774 N.E.2d 559, 564-65 (Ind. App. 2002). Courts should consider whether the moving party has presented evidence showing: "(1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Id*. at 565.

The Plaintiffs have presented no evidence at all to meet this burden. They merely argue that both TWE's use of the trade name "Time Warner Cable" within Indiana and TWCCA's use of the same name outside of Indiana is confusing. That may be true. However, a potential for confusion, does not justify piercing the corporate veil. Indeed, operation under a common business name does not automatically confer personal jurisdiction over every entity operating under the same name. *Oddi v. Mariner-Denver*, 461 F. Supp. 306, 310 (S.D. Ind. 1978). *Oddi* demonstrates that multiple companies may properly operate in different states with the same business name. We find nothing suspicious in related cable companies utilizing the same trade name in different states. Thus, TWE's and TWCCA's use of the name "Time Warner Cable" does not provide us with any reason to "pierce the corporate veil."

Because the Plaintiffs have failed to demonstrate that TWCCA has any business contacts whatsoever with the State of Indiana, we find that TWCCA is not "doing business" in Indiana for purposes of Indiana Trial Rule 4.4(a). Nevertheless, because the long-arm provision contains the catch-all provision, we continue to the due process analysis to determine whether general or specific jurisdiction might provide the Plaintiffs with an avenue for haling TWCCA into this Court.

**B.     The Due Process Analysis**

In order for personal jurisdiction to be consistent with due process, a defendant must have established minimum contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000). A court examines whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *Central States*, 230 F.3d at 943. The defendant must have purposefully availed himself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474-75; *Central States*, 230 F.3d at 943.

There are two types of contacts that may be sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state that are unrelated to the basis of the lawsuit – known as general jurisdiction; and (2) the defendant's contacts that are related to the subject matter of the lawsuit – specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8-9 (1984). We consider each of these.

11

1.     **Specific Jurisdiction**

In determining whether specific personal jurisdiction exists, we must consider whether the defendant has purposefully established contact with the forum state and the basis of his lawsuit must arise out of these contacts. *Purdue Research Foundation*, 338 F.3d at 780; *See World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316-17 (1945). The analysis of contacts for specific personal jurisdiction is conducted on a case-by-case basis. *Purdue,* 338 F.3d at 780. The inquiry into minimum contacts must focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation. *Id*. When employing this test, the Supreme Court has made it clear that the court must focus on foreseeability and whether the defendant could have anticipated being haled into courts of the state with respect to the matter at issue. *Id.*

Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a substantial connection with the forum state. *Burger King*, 471 U.S. at 475. This requirement is designed to ensure that the defendant retains the ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct. *Id.* at 472. Thus, where a defendant has deliberately engaged in significant activities within a state, or has created continuous obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well. *Id.* at 475. However, simply contracting with a party based in Indiana is not enough to establish the required

12

minimum contacts. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (citing *Burger King*, 471 U.S. at 472 n. 14); *Purdue*, 338 F.3d at 781..

TWCCA has no real contacts to Indiana. TWCCA does not maintain offices, employees, or property in this state. TWCCA does not advertise in this state. TWCCA did not solicit business from Que Sera; it occurred the other way around. In fact, virtually all of the contact between the two occurred in New York. Que Sera traveled to New York to film the Ford commercial. Que Sera approved the Ford commercial in New York. TWCCA aired the Ford commercial on New York cable systems. Que Sera paid for the commercial while in New York. Indeed, the only contact that TWCCA had with Indiana is that its customer, Que Sera, is located here. This is not enough. *Purdue*, 338 F.3d at 781 ("[C]ontracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.").

The record simply will not support the conclusion that TWCCA purposefully availed itself of the benefits of conducting business in Indiana with respect to this litigation and it would be fundamentally unfair to require TWCCA to submit to the jurisdiction of this Court. Therefore, the Court finds that specific personal jurisdiction does not exist in this case.

**2.     General Jurisdiction**

A court may establish general jurisdiction over a defendant based on the defendant's business contacts with the forum state, and general jurisdiction permits a court to exercise its jurisdictional power in a case where the subject matter of that case is unrelated to those contacts. *Helicopteros*, 466 U.S. at 414-16 & nn. 8-9. Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more rigorous test than that associated with

specific personal jurisdiction, requiring the party claiming jurisdiction to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416.  As we have already discussed above, the Plaintiffs have failed to provide the Court with any evidence that TWCCA has minimum contacts with Indiana for purposes of specific personal jurisdiction, let alone evidence of the type of "continuous and systematic" contacts required to establish general personal jurisdiction.  TWCCA does not maintain offices in Indiana, does not have employees in Indiana, and does not advertise in Indiana.  The Plaintiffs have not disputed this evidence nor have they suggested any additional contact other than the "Time Warner Cable" business name that we discussed (and rejected) above.  Without any information to convince the Court that TWCCA has maintained the requisite systematic and continuous contacts with the State of Indiana to subject itself to the general personal jurisdiction of this Court, we find that general personal jurisdiction does not exist in this case.

### III.  CONCLUSION

Accordingly, the exercise of personal jurisdiction over Defendant TWCCA is not proper under either the Indiana long arm statute or federal due process.  Therefore, Defendant TWCCA's Motion to Dismiss for Lack of Personal Jurisdiction [Docket No. 17] is **GRANTED**.

**SO ORDERED.**

ENTERED: November 2, 2005

                                                    s/ Philip P. Simon
                                                    PHILIP P. SIMON, JUDGE
                                                    UNITED STATES DISTRICT COURT